IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ELIZAMA C. LANDEROS, | § | |
| INDIVIDUALLY, AND AS | § | |
| REPRESENTATIVE OF THE | § | |
| ESTATE OF RUBEN DELGADO | § | |
| LANDEROS, DECEASED | § | CIVIL ACTION NO. 7:17-CV-00475 |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| TRANSAMERICA LIFE INSURANCE | § | |
| COMPANY et al | § | |
| *Defendants*. | § | |

PLAINTIFF'S RESPONSE TO DEFENDANT TRANSAMERICA LIFE
INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Elizama C. Landeros, Individually and as Representative of the Estate of

Ruben Delgado Landeros, Deceased, Plaintiff, and submits her Response to the Motion for Final

Summary Judgment filed by Transamerica Life Insurance Company, hereafter referred to as

Defendant; and in support thereof would respectfully show unto the Court as follows:

## Table of Contents

Introduction ............................................................................................................................... 1

Summary Judgment Standard ...................................................................................................... 1

Evidence Attached ....................................................................................................................... 2

Statement of Facts ....................................................................................................................... 2

Arguments and Authorities

A. Rescission of an Insurance Policy for a Misrepresentation ....................................................... 3

    1. The *Mayes* Factors Generally ........................................................................................ 4

    2. Defendant Claims *Mayes* is No Longer the Law ............................................................ 5

    3. The Defendant is Wrong ................................................................................................ 5

        —Insurance Code Provisions Have Not Changed ...................................................... 6

        —Courts Recognize *Mayes* is Still the Law .............................................................. 8

B.     The Defendant Cannot Prove Reliance ................................................................................ 9

    1. What the Evidence Shows ............................................................................................ 10

    2. Content of Missing Answers are not Proven ................................................................. 10

    3. Defendant's Defense in this Case is Precluded by the Texas Insurance Code ............. 11

    4. Defendant fails to Meet its Burden of Showing the "Reliance" Element ..................... 13

    5. Extra-Contractual Claims are Viable ........................................................................... 14

Conclusion and Prayer ............................................................................................................... 15

Certificate of Service ................................................................................................................. 17

Proposed Order .......................................................................................................................... 18

## I.
## Introduction

This is a dispute over the refusal of Transamerica Life Insurance Company, Defendant herein, to pay life insurance proceeds due under a policy it issued to Ruben Delgado Landeros, Deceased. Broadly, the Defendant asserts it has no obligation to pay because of alleged misrepresentations made on the policy application, and further that it has no obligation to prove the Deceased had any intent to deceive it with respect to the information provided on the application. It now seeks summary judgment on the claims brought against it.

## II.
## Summary Judgment Standard

To prevail on its request for summary judgment, the Defendant must prove there are no genuine issues of material fact and that it is therefore entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986); *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002) Here, the Defendant moves for summary judgment based on its affirmative defense that alleged material misrepresentations made on the policy application entitled it to the right to rescind the policy. For a defendant to prevail when it moves for summary judgment on an affirmative defense, it must show the absence of a genuine dispute of any material fact and establish each element of its affirmative defense as a matter of law. *See Crescent Towing & Salvage Co. v. M/V ANAX*, 40 F.3d 741, 744 (5th Cir.). A genuine fact issue is one that can be determined only by a trier of fact, because it may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505 (1986).

1

III.
Evidence Attached

In support of the factual statements made in this Response, Landeros relies on the arguments made and authorities cited herein, the evidence attached to the Defendant's Motion cited herein, and on the following evidence attached hereto and incorporated herein by reference as if set forth at length:

| | |
|---|---|
| Exhibit A | Excerpts from the deposition of Landeros; |
| Exhibit A1 | Letter from Defendant dated October 25, 2016 to Landeros; |
| Exhibit A2 | Landeros handwritten statement to Defendant; |
| Exhibit B | Excerpts from the deposition of Estevan Lopez; |
| Exhibit B1 | Letter from Defendant dated October 25, 2016 to Lopez; and |
| Exhibit B2 | Lopez answers to questionnaire from Defendant |

IV.
Statement of Facts

This case arises out of the Defendant's refusal to pay the proceeds due under a life insurance policy issued to Ruben Delgado Landeros, Deceased. The Deceased was a preacher and pastor who wanted an insurance policy to cover the cost of his mortgage for his wife in case he died. Exhibit A, 15:20-16:2; 147:8-14; Exhibit B, 60:1-4, 7-10. He was contacted by Estevan Lopez, an independent insurance agent. Exhibit B, 24:23-25:3.

Lopez does not remember many specifics about his meeting with the Decedent and Landeros, but was able to testify about his routine when meeting with people wishing to purchase such insurance. Exhibit B, 58:22-59:1. According to Lopez, he would first chat generally with a potential insured about their health, because if they were in bad health there would be little point in applying for life insurance. Exhibit B, 59:6-11, 62:20-63:8, 76:13-24,

2

128:5-12. This conversation was not written down, and what was said during the conversation was not given to the insurance company. Exhibit B, 128:21-130:4, 131:18-132:6, 133:4-17.

After this general discussion, Lopez testified that he translated from English to Spanish the application for insurance to the Decedent, and recorded the answers and information the Decedent provided in response. Exhibit B, 64:16-65:20 and 112:2. He also claims to have read a series of specific health related questions to Landeros, again recording his answers. Exhibit B, 86:3-18. However, Lopez does not remember what the answers were, except to claim he accurately recorded what he had been told. Exhibit B, 96:20-97:11, 117:21-118:2. He then claims to have faxed the documents to the Defendant. Exhibit B, 70:9-17, 150:15-151:15.

Somewhere along the way, the record of the Decedent's answers to the health questions asked by Lopez disappeared. The document Lopez filled out has not been produced by the Defendant, and Lopez testified that after he retired he shredded all documents he had, Exhibit B, 118:5-12, and that he does not know what became of it. Exhibit B, 137:16-139:13, 150:10-12, 165:4-11. In fact, the only record produced by the Defendant containing health information given by the Decedent related to the policy application is a different document, filled out by a home health care worker who visited the Decedent the day after his meeting with Lopez, and who performed a basic health exam for the Defendant. Exhibit B, 86:19-87:1. Lopez testified he did not know the person performing the exam, that he had never spoken with her, and that he was not present when she took this information. Exhibit B, 88:7-89:24.

## V.
## Arguments and Authorities

A.    Rescission of an Insurance Policy for a Misrepresentation

3

The Defendant argues that it was entitled to rescind the insurance policy it issued, and to refuse to pay the benefits due thereunder, because it claims the evidence shows the Deceased made material misrepresentations about his health in the policy application. Doc. 36, § IV(B). This assertion is incorrect because the law is settled that, in order to rescind an insurance policy for misrepresentations made in the application, the insurer must prove an intent to deceive on the part of the insured, which the Defendant does not even attempt to do here.

1.    The *Mayes* Factors Generally

"The Erie doctrine requires federal courts, when applying state law, to apply, where possible, the law as 'declared by its (the State's) legislature in a statute or by its highest court.'" *Broussard v. Southern Pacific Transp. Co.*, 625 F.2d 1242, 1245 n. 3 (5th Cir. 1980) (citing Erie Railroad Co. v. Tomkins, 304 U.S. 64, 78 (1938).

The question presented here is whether, under Texas law, the Defendant can refuse to pay the proceeds due under a life insurance policy because of a supposed misrepresentation on the application, regardless of whether the insured intended to deceive the insurer when making the representation

It has been the law in Texas for more than 150 years that in order for a life insurance company to be permitted to rescind a life insurance policy, during the contestable period, the life insurance company, not the insured, has the burden of proving certain specific elements. The elements required to be proven to support a defense for non-payment under a policy based on a misrepresentation made on the application are: (1) a representation was made; (2) the representation was false; (3) reliance by the insurer; (4) intent to deceive on the part of the insured; and (5) the materiality of the representation. *See Mayes v. Massachusetts Mut. Life Ins.*

4

*Co.,* 608 S.W.2d 612, 616 (Tex. 1980); *Banner Life Ins. Co. v. Pacheco*, 154 S.W.3d 822, 827 n.

7 (Tex. App. — Houston [14th Dist.] 2005, no pet.); *Protective Life Ins. Co. v. Russell*, 119

S.W.3d 274, 280 (Tex. App. — Tyler 2003, pet. denied); 27 TEX. PRAC., CONSUMER RIGHTS &

REM. § 5:7 (3rd ed. Supp. 2019).[1]

      2.      Defendant Claims *Mayes* is no Longer the Law

In its Motion, the Defendant offers no proof that the Decedent had any intent to deceive

the Defendant with the information given in connection with the insurance application that led to

the issuance of the policy at issue. This absence of proof is intentional — the Defendant claims

such proof is unnecessary. The Defendant's argument, that they are not required to prove intent

to deceive on the part of the insured, is based, in its entirety, on a single district court opinion,

*Colonial Penn Life Ins. Co. v. Parker*, 362 F.R.D. 380 (S.D. Tex. 2019). In it, the court, in *dicta*,

held that when the Insurance Code was recodified in 2003, it limited the "intent to deceive"

element to policies that have been in effect for more than two years, and with respect to policies

in effect less than two years (like the policy in this case) no intent to deceive need be proven.

*Parker*, 362 F.R.D. at 398-403.

      3.      The Defendant is Wrong

The decision in *Parker* is based on amendments to the Insurance Code passed in 2003,

and which took effect in 2005. These amendments were expressly *not* intended to be substantive,

or to change existing law, such as *Mayes*. By their terms, the amendments were specifically

contemplated to be a non-substantive revision of existing law. 78th Leg. R.S., Ch. 1274,

---

[1] To the extent necessary, Landeros asks the Court to take judicial notice of Texas law cited herein, specifically including authorities discussing the *Mayes* factors and those discussing

Preamble (2003). Such non-substantive recodifications do not change the law. *Blount v. Dutton*, 967 S.W.2d 955, 957 (Tex. App. — Beaumont 1998, no pet.); *see also Coastal Marine Svc. of Tex., Inc. v. City of Port Neches*, 11 S.W.3d 509, 512 (Tex. App. — Beaumont 2000, no pet.) (the mandate of the Texas Legislative Council is to codify Texas statutes into codes on related topics, without making substantive changes the Council lacks the authority to make).

—   <u>Insurance Code Provisions Have Not Changed</u>

Recognizing this was the case, the court in *Parker* (and necessarily, the Defendant in its Motion) claims the rule that recodification does not change the law does not apply if there has, in fact, been a material change to the statute when it is re-enacted. *Parker*, 362 F.R.D. at 402. This is because courts cannot avoid the effect of a clear change in law merely because the change was supposed to be non-substantive. *Fleming Foods of Tex., Incl. v. Rylander*, 6 S.W.3d 278, 283-84 (Tex. 1999). Rather, if some "clear, specific" language changes the law, the change must be given effect. *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 213 (Tex. App. — Houston [1st Dist.] 2016, no pet.). While this is all well and good, it is irrelevant because no such "clear, specific" change occurred in the 2005 recodification.

The court in *Parker* based its decision on a distinction between two provisions of the statute, one of which (Section 705.104) specifically mentions intent to deceive and the other of which (Section 705.051) does not. *Parker*, 362 F.R.D. at 401-03. The problem with this distinction is that it existed *before* the 2005 recodification: prior Article 21.18 (now Section 705.051) and Article 21.35 (now Section 705.104) were substantively identical to current law, with Article 21.18 making no specific mention of intent to deceive, and Article 21.35 specifically

---

the application of Section 705.103 of the Insurance Code, *post*.

6

requiring a misrepresentation be "intentionally made." *Compare* Tex. Ins. Code Art. 21.18, *with* Tex. Ins. Code § 705.05; *and compare* Tex. Ins. Code Art. 21.35, *with* Tex. Ins. Code § 705.104.[2-3] Despite this difference in the language of the statutes, the Court in *Mayes* imposed an "intent to deceive" requirement on any attempt to rescind an insurance policy. The lack of any change when the statute was recodified means that the change necessarily cannot have been a substantive change, as the *dicta* in the *Parker* opinion states. Put plainly, the statutory law when *Mayes* was decided is the same as the statutory law now, the fact the statute was recodified in the interim notwithstanding.

When a recodification is substantially the same as prior law, it has the same meaning as the prior law. *Walker v. Money*, 120 S.W.2d 428, 431 (Tex. 1938); *Cadle Co. v. Butler*, 951 S.W.2d 901, 908 (Tex. App. — Corpus Christi 1997, no pet.); *Vielma v. Eureka Co.*, 218 F.3d 458, 466 (5th Cir. 2000). And when a statute is interpreted by the courts in a particular way, and the Legislature then amends or recodifies it without "substantial change", the Legislature is presumed to have adopted the judicial interpretation, and to intend it to continue to apply to the

---

[2] Tex. Ins. Code § 705.051 has, in substance, been in effect since at least 1909. *See* Tex. Rev. Civ. Stat. art. 5045 (1925) (providing "no recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed")

[3] Tex. Ins. Code § 705.104 has, in substance, been in effect since at least 1903. *See* Tex. Rev. Civ. Stat. art. 5049 (1925) (providing "that no defense based upon misrepresentation made in the application for, or in obtaining or securing, any contract of insurance upon the life of any person being or residing in this State shall be valid or enforceable in any suit brought upon such contract two years or more after the date of its issuance, when premiums due on such contract for the said term of two years have been paid to, and received by, the company issuing such contract, without notice to the assured by the company so issuing such contract of its intention to rescind the same on account of misrepresentation so made, unless it shall be shown on the trial that such misrepresentation was material to the risk and intentionally made").

7

"new" law. *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012); *Pettigrew v. State*, 48 S.W.3d 769, 772-73 (Tex. Crim. App. 2001); *Coastal Indus. Water Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co.*, 563 S.W.2d 916, 918 (Tex. 1978).

Moreover, it is illustrative that there was also a recodification of the statutes at issue when they were recodified from the Revised Texas Civil Statutes to the Insurance Code of 1951 (changed from Art. 5045 to 21.18, and 4951 to 21.35, respectively). If the Defendant is correct in their reasoning, why then did the Supreme Court still require the element of "intent to deceive" when it decided *Mayes?* Why did it not conclude that the legislature intended a substantive change during the 1951 recodification? The obvious answer, of course is that in the 1950's, as in 2003, the legislature did not intend any substantive change to the insurance code and, therefore, none was recognized by the Texas Supreme Court.

— Courts Recognize *Mayes* is Still the Law

That this understanding is correct is confirmed by the fact that many courts have, since 2005, discussed or applied the *Mayes* "intent to deceive" requirement in cases like this one. *See, e.g., Nguyen. v. Allstate Ins. Co.*, 404 S.W.3d 770 (Tex. App. — Dallas 2013, pet. denied); *United of Omaha Life Ins. Co. v. Halsell*, SA-08-CV-1007-XR, 2010 WL 376428 (W.D. Tex. Jan. 25, 2010); *Temcharoen v. United Fire Lloyds*, 293 S.W.3d 332 (Tex. App. — Eastland 2009, pet. denied); *Liu v. Fidelity & Guar. Life Ins. Co.*, 282 Fed.Appx. 304 (5th Cir. 2008); *Hinna v. Blue Cross Blue Shield of Tex.*, 4:06-CV-810-A, 2007 WL 3086025 (N.D. Tex. Oct. 22, 2007); *Kirk v. Kemper Investors Life Ins. Co.*, 448 F.Supp.2d 828 (S.D. Tex. 2006). The clearest statement of the current state of the law is found in a case involving a malpractice insurance policy, applying the "intent to deceive" requirement despite the fact the statute makes no specific

8

mention of it:

> Section 705.004 [of the Insurance Code][4], in its different codifications, is now
> 110 years old. Although the statute never expressly required the insurer to prove
> the insured intended to deceive the insurer with a misrepresentation in the policy
> application, the courts of Texas have consistently held than an insurer may not
> rescind a policy due to a misrepresentation in an insurance application unless the
> insurer proves the insured intended to deceive the insurer with the
> misrepresentation. We cannot vary from this long history of case law imposing a
> duty upon insurers. We conclude "the intent to deceive on the part of the insured
> making" a misrepresentation in an application for insurance is an element the
> insurer must prove to obtain a declaratory judgment that a policy is void due to
> the misrepresentations.

*Medicus Ins. Co. v. Todd*, 400 S.W.3d 670, 679 (Tex. App. — Dallas 2013, no pet.).

The premise of the Defendant's Motion, that if it can simply prove a misrepresentation before canceling a policy, is wrong. The sole support on which this argument relies, *dicta* in *Parker*, is also wrong. *Parker* cannot overrule the Texas Supreme Court on an issue of Texas law, and has not done so. *Mayes* is still the law, and therefore the Defendant is not entitled to summary judgment unless it proves the Decedent made not just a misrepresentation, but a misrepresentation with an intent to deceive. The Defendant does not, and cannot show, as a matter of law, that the alleged misrepresentations cited in its Motion were intentionally made by the Deceased with an intent to deceive, as more fully explained below. Accordingly, the Defendant's request for summary judgment should be denied.

B.    The Defendant Cannot Prove Reliance

Defendant's Motion fails to establish it is entitled to summary judgment because the summary judgment evidence provided by the Defendant fails to prove, as a matter of law, that

---

[4] This section forbids most provisions in an insurance policy making the policy void if it was issued because of "false statements made in the application ...," Tex. Ins. Code § 705.004(a),

9

any alleged misrepresentation made by the insured in connection with the application was relied on by Defendant in issuing the policy.

    1.    <u>What the Evidence Shows</u>

As set forth above, the Decedent was asked questions about his health twice: once by Estevan Lopez, the agent who sold him the policy, and a second time by a health care worker, who visited the Decedent afterwards to perform a physical for the benefit of the Defendant. Lopez hand-wrote the answers he was given to the health questions he asked the Decedent, while the health care worker entered the answers on a computer. Although the Court would not know it from reading the Defendant's Motion, every reference to an answer to a health-related question the Decedent was asked that the Defendant cited in its Motion came from the second set of questions; we know this because the answers to the first set of questions, taken by Lopez, are inexplicably missing. The absence of these answers is important, for two reasons.

    2.    <u>Content of Missing Answers are not Proven</u>

First, because the answers given by the Decedent to Lopez are missing, no one can say what answers he gave to this set of health questions: the Decedent is dead; his wife, Landeros, testified she could not recall the specifics of any of the questions Lopez asked the Decedent about his health, Exhibit A, 39:16-19; and Lopez testified he does not remember much of what the Decedent told him beyond that he was in good health, Exhibit B, 77:10-14, and does not have the paperwork that would answer the question. Exhibit B, 118:3-12, 149:6-150:14. Without knowing what answers and information the Decedent gave to the questions asked of him by Lopez, it is impossible to know if he gave false answers, and if so, whether such was done

and is understood to require the kind of intent to deceive to void a policy that is at issue here.

intentionally or not.

The Defendant seeks to gloss over this failure of proof, citing the Court to the second set of questions answered by the Decedent, as well as claiming it relied on statements about his health that the Decedent gave Lopez. Doc. 36, ¶ 6. This cannot be true. With respect to statements Lopez claims the Decedent made about his health when they were chatting before Lopez began to write down the information, the evidence shows these statements were never made known to the Defendant, and therefore it cannot have relied on them. With respect to the written answers Lopez did take down, the Defendant may have relied on this information (which Lopez testified he faxed to the Defendant), but because the answers are missing there is no proof the Decedent made any statement (true, false or in between) regarding his health in connection with the application.

This leaves only the answers taken down by the health care worker. As a matter of law, the Defendant cannot have relied on these answers, either. The law is clear the health-related questions an insurer is entitled to rely on in deciding whether to issue a policy are those submitted with the policy application. By statute, a life insurance policy must include a copy of the application and "any questions and answers given in connection with the application." Tex. Ins. Code § 705.103. Here, the answers to the health-related questions taken by Lopez, which Lopez says were submitted to the Defendant with the rest of the policy application, are missing. The health-related questions on which the Defendant now claims to have relied on were taken at a different time. The answers given may be the same as those given to Lopez, or maybe not — in the absence of the answers taken by Lopez, there is no way to tell.

3.    Defendant's Defense in this Case is Precluded by the Texas Insurance Code

We would direct the attention of the Court to the Texas Insurance Code which mandates that a life insurance policy, when issued, must have attached , not only application, but also "any questions and answers given in connection" with it. Tex. Ins. Code § 705.103 (requiring that "a life insurance policy must be accompanied by a copy of (1) the policy application, and (2) any questions and answers given in connection with the application"). If the application is missing this material, the insurer is not allowed to use an alleged misrepresentation made in answers given in connection with the application as a basis for avoiding its obligations under a policy it has issued. *Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 285-88 (Tex. 1994); *Safeway Managing Gen. Agency for State & County Mut. Fire Ins. Co. v. Cooper*, 952 S.W.2d 861, 866 (Tex. App. — Amarillo 1997, no pet.); *Riner v. Allstate Life Ins. Co.*, 131 F.3d 530, 537-38 (5th Cir. (Tex.) 1997); *see also West Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, 08-CV-80897-RYSKAMP, 2011 WL 13173545 at * 3 (S.D. Fla. Jan. 10, 2011) (applying Texas law). Such laws are common, *see, e.g.*, 2 COUCH ON INS. § 18:18 (3rd ed. Supp. 2018), and have the effect of making alleged representations inadmissible as evidence in a suit to set aside the policy. *National Lloyds Ins. Co. v. McCasland*, 566 S.W.2d 565, 566 (Tex. 1978). "In such instances [where the materials to be attached to the policy are missing] the application *per se*, is excluded from the contract." *Cooper*, 952 S.W.2d at 866. These authorities (which the Defendant does not cite) support Landeros' argument that because the Defendant is unable to produce the answers to the questions asked of the Decedent in connection with his application for life insurance, the Defendant is precluded from pointing to any other representations he may have made, and is not allowed to seek to have the policy set aside on the basis of an alleged

12

misrepresentation.

    4.    <u>Defendant Fails to Meet Its Burden of Showing the "Reliance" Element</u>

When asked why he wrote down the Decedent's answers on the application (as opposed to the Decedent writing them in himself), Lopez testified that it was because the "insurance companies" (presumably including the Defendant) requested that he be the one to actually fill in the answers to the application, and then have the proposed insured sign the document thereafter. Exhibit B, 64:16-18. Lopez testified that he followed that procedure in this case. *Id.* Lopez also testified that he then sent the written application containing the Decedent's answers to the health questions to the Defendant via direct fax. Exhibit B, 70:9-14.

Following Landeros making her claim for benefits under the policy, the Defendant sent a letter to both Landeros and Lopez requesting they provide information regarding the policy application process that was conducted by Lopez. Exhibit A1 and B1. In their response, both Landeros and Lopez, in separate letters, wrote to the Defendant notifying it that Lopez was the one that asked the policy applications questions to the Deceased, and that Lopez recorded the answers that the Deceased provided. Exhibit A2 and B2. When asked during deposition whether he had spoken to the Defendant regarding Landeros' claims made in this lawsuit, Lopez testified that after Landeros filed her lawsuit, he called the Defendant to request a copy of the application he filled out on behalf of the Decedent and which he testified he sent to the Defendant. Exhibit B, 149:6. According to Lopez, the Defendant refused to provide him a copy because he "was no longer a licensed insurance agent and they -- legally they couldn't send me a copy of that application." *Id.*

In order to succeed on summary judgment, the Defendant has the burden of establishing

that, as a matter of law, it relied on the misrepresentations it points to in its Motion when it decided to issue the policy to the Decedent. *See Mayes,* 608 S.W.2d at 616 (requiring that reliance on the part of the insurer on a misrepresentation made on a policy application is one element required to be proven before a policy can be rescinded based on the misrepresentation). In other words, of all the information provided to it during the application process, the Defendant must show that there was no information contrary to the answers to the health questions it states were misrepresented in the typed-up application provided to it by the health care worker.  It cannot show that because according to Lopez, he sent the Defendant the handwritten application he filled out during his meeting with the Deceased, and those answers were not attached to the policy, as required by the Texas Insurance Code.

The Defendant's Motion does not establish that: (1) it never received the Lopez application; (2) it did not consider information contained on the application when considering whether to issue the policy to the deceased; or (3) that the content contained on the Lopez application was consistent with the information contained on the typed-up application provided by the health care worker.  For this reason, the Defendant fails to meet its burden that it relied on any alleged misrepresentation made by the Deceased when it decided to issue him an insurance policy.

     5.    Extra-Contractual Claims are Viable

Finally, the Defendant argues that the extra-contractual claims brought against it under the Insurance Code are also invalid, an argument based entirely on the supposition that its rescission of the policy was proper. Doc. 36, ¶¶ 28-29. The foregoing shows this supposition is not correct, and therefore the Motion does nothing to prove the Defendant is entitled to summary

14

judgment on these claims, either.

## VI.
### Conclusion and Prayer

The Defendant's entire argument in this case is based on the narrowest of points — the decision in *Parker*. It claims *Parker* says it does not need to prove intent to deceive and, therefore, proof of anything that might qualify as a misrepresentation allows it to rescind any life insurance policy that has been in force for less than two years. The foregoing shows this is incorrect, for a number of reasons: (1) the 2005 changes to the Texas Insurance Code were intended by the Legislature to be non-substantive; (2) the 2005 changes to the Texas Insurance Code were, in fact, non-substantive as compared to the predecessor statutes in force at the time of the *Mayes* decision; and (3) *Parker* aside, all other state and federal courts who have reviewed whether a policy was properly rescinded following the 2005 statutory changes have applied the *Mayes* factors, including the element of intent to deceive. Moreover, the Defendant cannot prove that it relied on any alleged misrepresentations made by the Deceased because it lacks the information the statute requires to allow it to try to do so, i.e. the full application and questions and answers given in connection with the policy application.  For these reasons, the Defendant's request for summary judgment ought to be denied.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that prays the Defendant's Motion for Final Summary Judgment be in all respects DENIED, for the reasons set forth herein.

15

Respectfully submitted,

ALLEN, STEIN & DURBIN, P.C.
6243 IH-10 West, 7th Floor
P. O. Box 101507
San Antonio, Texas 78201
Telephone:      210.734.7488
Facsimile:      210.738.8036

By: _____
        ROBERT A. ALLEN
        State Bar No. 01051000
        Federal Bar No. 13390
        rallen@asdh.com

        JOHN B. GRISSOM
        State Bar No. 24092457
        Federal Bar No 3229192.
        jgrissom@asdh.com

Van A. Hutchins
State Bar No.: 10345500
van@texattorneys.com
LAW OFFICE OF VAN A. HUTCHINS
614 North Jackson Road
Edinburg, Texas 78541
Telephone:      956.316.2444
Facsimile:      956.316.2439

ATTORNEYS FOR ELIZAMA C. LANDEROS
INDIVIDUALLY AND IN HER REPRESENTATIVE
CAPACITIES

16

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing *Plaintiff's Response to Defendant Transamerica Life Insurance Company's Motion for Final Summary Judgment* was on the 31st day of May 2019, has been served in accordance with the Fed. R. Civ. P. to the persons indicated below:

    Mr. Jason R. Bernhardt
    jbernhardt@winstead.com
    Ms. Angela Y. Kao
    akao@winstead.com
    WINSTEAD, PC
    600 Travis, Suite 5200
    Houston, Texas 77002
    713.650.2400 – Facsimile

    Mr. Jonathan L. Almanza
    jonathan.almanza.law@gmail.com
    LAW OFFICES OF JONATHAN L. ALMANZA
    1431 Leann Rimes Road, Suite B
    Edinburg, Texas 78542

                                     ROBERT A. ALLEN
                                     JOHN B. GRISSOM

#1762409/5795 042/RAA/JBG/tst

17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ELIZAMA C. LANDEROS,                    §
INDIVIDUALLY, AND AS                    §
REPRESENTATIVE OF THE                   §
ESTATE OF RUBEN DELGADO                 §
LANDEROS, DECEASED                      §          CIVIL ACTION NO. 7:17-CV-00475
   *Plaintiff*,                       §
                                        §
v.                                      §
                                        §
TRANSAMERICA LIFE INSURANCE             §
COMPANY et al                           §
   *Defendants*.                      §

### ORDER DENYING TRANSAMERICA'S MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Defendant Transamerica Life Insurance Company's ("Defendant") Motion for Final Summary Judgment (the "Motion"). After reviewing the Motion, the response and the reply, if any, and considering the evidence and legal arguments presented, this Court finds that Defendant's Motion should be DENIED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Motion is hereby DENIED.

SIGNED this _____ day of _____ 2019.

_____
RANDY CRANE
UNITED STATES DISTRICT JUDGE

#1760447/5795 042/JBG/RAA/tst